UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

BERGSTROM, INC.,

                Plaintiff,

        v.                           Case No. 08-CV-50078

GLACIER BAY, INC.,

                Defendant.

**PLAINTIFF BERGSTROM INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY**

**INTRODUCTION**

Perhaps the single most relevant piece of information in this case bearing on the question of infringement is the source code for the controller software in Glacier Bay's accused ClimaCab product. That source code is the human-readable version of the code that determines how the controller in the ClimaCab product operates. In turn, the specific operation of the ClimaCab controller will determine in large part whether or not the ClimaCab product infringes many of the claims of Bergstrom's patents. Glacier Bay does not contest the relevance of the source code or its responsiveness to discovery requests served by Bergstrom well over a year ago. Nevertheless, Glacier Bay refuses to produce the source code.

Bergstrom's attempts to convince Glacier Bay to produce the source code through correspondence and telephone communications between counsel have failed. Now, therefore, Bergstrom respectfully requests that this Court compel

Glacier Bay to produce the requested source code, and, as a sanction for Glacier Bay's refusal to comply with its discovery obligations, award to Bergstrom its costs and fees incurred in bringing this motion.

## FACTUAL BACKGROUND

Plaintiff Bergstrom, Inc. ("Bergstrom") served defendant Glacier Bay, Inc. ("Glacier Bay") with Bergstrom's First Set of Interrogatories, First Set of Requests to Admit, and First Request for Production of Documents (the "First Requests") on or around October 17, 2008. (Declaration of Paul J. Stockhausen, ("Stockhausen Decl.,") ¶ 2.) Glacier Bay responded on November 26, 2008. (Stockhausen Decl., ¶ 3.)

Request for Production No. 13[1] of the First Requests requested "All documents that support or relate to Glacier Bay's contention that the Accused Products do not infringe any claim of the '762 Patent." (Stockhausen Decl., Ex. A, p. 15.) Glacier Bay objected to this request "as seeking documents which may contain Glacier Bay confidential information. Glacier Bay will not produce such relevant, responsive, non-privileged documents until a Protective Order is entered by the Court." (Stockhausen Decl., Ex. B, p. 12.) Glacier Bay did not object on the grounds that the request is not reasonably calculated to lead to the discovery of admissible evidence. (*Id.*)

---

[1] The source code at issue is likely responsive to several of the First Requests. Glacier Bay has indicated that the source code is responsive, but not identified a specific request. For purposes of this motion, the source code may be considered responsive to at least Request No. 13.

2

Subsequent to Glacier Bay's response, on January 30, 2009, this Court entered a Protective Order that was the subject of extensive negotiations between the parties. (Stockhausen Decl., ¶ 4, Confidentiality Stipulation and Protective Order (the "Protective Order").) That Protective Order provides for the designation of confidential information as either "Confidential" or "Confidential - Attorney's Eyes Only," and specifically requires that any such designated information "shall be used by its recipient solely for the purposes of this litigation and not for any business, competitive or other purpose." (Protective Order, p. 6, ¶ 6.) The Protective Order further provides, in pertinent part:

> No information may be withheld from discovery on the basis that the information requires greater protection than that afforded by this Stipulation and Protective Order, unless the party claiming the need for greater protection moves for and obtains an order for such special protection from the Court.

Protective Order, p. 7, ¶ 12.

The parties in this case have operated under an agreement to produce all documents electronically in OCR'd tiff-image format with document database loadfiles for the convenience of document management and review. (Stockhausen Decl., ¶ 5.) Except for the source code at issue here, both parties have complied with this agreement and produced all documents, regardless of confidentiality designation, in the agreed format. (Stockhausen Decl., ¶ 6.)

Glacier Bay refuses to produce the source code in a manner consistent with the parties' agreement and past practice in this case and instead has taken the

3

position that the source code will only be disclosed to Bergstrom through an onerous and restrictive method that would not only be unnecessarily expensive and burdensome for Bergstrom, but would also make if far more difficult, if not impossible, for Bergstrom to adequately review and make use of this critical piece of information. (Stockhausen Decl., ¶ 7.) Glacier Bay proposes to produce the source code exclusively by means of a laptop to be made available at the offices of Glacier Bay's attorney, to be reviewed solely by Bergstrom's expert and Bergstrom's counsel at that office, "for a reasonable amount of time and at reasonable hours," under the supervision of a Glacier Bay paralegal. Glacier Bay agreed that Bergstrom's expert would be entitled to print selected screen shots during review, but otherwise could not take or retain a copy of the source code for further review. (Stockhausen Decl., ¶ 8.) According to Glacier Bay, the source code in question is written in the "C" programming language and it constitutes approximately 23,500 documents. (Stockhausen Decl., ¶ 9.)[2]

Bergstrom rejected Glacier Bay's proposed method of production and requested that Glacier Bay produce each relevant version of the source code via the parties' agreed method of production applicable to all other discovery in this case. (Stockhausen Decl., ¶ 10.) In connection with that request, Bergstrom indicated that it would comply with the application of an Attorneys' Eyes Only designation to Glacier Bay's source code, and remains willing to stipulate to such a

---

[2] This is for a single version of the source code. Because it appears that multiple versions of the code may have been in use during the relevant time period, Bergstrom seeks production of each such relevant version.

4

designation under the Protective Order. Nevertheless, Glacier Bay continues to refuse to produce the source code. (Stockhausen Decl., ¶ 11.)

Bergstrom's attorneys, Paul Stockhausen and Amy Lindner, participated in a telephone conference with counsel for Glacier Bay, including Kenneth Krosin and Mary Calkins, on Friday, December 11, 2009, at approximately 10:00 a.m. Central Time, in accordance with Local Rule 37.2. (Stockhausen Decl., ¶ 12.) Despite Bergstrom's good faith attempt to resolve this conflict, Glacier Bay remains unwilling to produce the source code in compliance with Bergstrom's request. (Stockhausen Decl., ¶ 13.)

## ARGUMENT

**I. BERGSTROM IS ENTITLED TO DISCOVER THE SOURCE CODE THAT GLACIER BAY HAS IDENTIFIED AS RESPONSIVE TO BERGSTROM'S FIRST REQUESTS.**

The source code at issue is highly relevant to the question of infringement. It is therefore essential to Bergstrom's ability to prove its case and to understand Glacier Bay's position on non-infringement. Bergstrom does not dispute that the source code it seeks is confidential information and would be appropriately designated as Attorneys' Eyes Only under the Protective Order. Bergstrom stands ready to comply with all of the requirements of such designation, and even is willing to consider such additional protections as may be appropriate to the extent they do not unreasonably interfere with Bergstrom's ability to review and utilize such a critical piece of information in this case.

5

The scope of discovery is generally very liberal under the Federal Rules of Civil Procedure (*see e.g. Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S. Ct. 2380 (1978)). However, where a party seeks "confidential information," the party seeking information bears the burden of establishing that "the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information." *Metavante Corp. v. Emigrant Savings Bank,* 2008 WL 1969596, *2 (E.D. Wis.), *quoting Litton Industries v. Chesapeake & Ohio Ry.,* 129 F.R.D. 528, 530 (E.D. Wis. 1990).

The Seventh Circuit Court of Appeals has held that, in balancing these interests, a court must consider "the relevance of the requested information, the demonstrated need for the information, and whether the request is burdensome." *Id., citing Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002). The level of necessity that must be shown is "that the information must be necessary for the movant to prepare its case for trial, which includes proving its theories and rebutting its opponent's theories." *Metavante Corp.,* 2008 WL 1969596, *3, *quoting Greater Rockford Energy & Technology Corp. v. Shell Oil Co.,* 138 F.R.D. 530, 534 (C.D. Ill. 1991).

### A. The Source Code is Central to Bergstrom's Case.

This is a patent infringement action. Bergstrom has alleged that Glacier Bay "has infringed and continues to infringe Claim 1, among others, of the '762 Patent by its manufacture, use, offer for sale, and/or sale of certain climate control

6

systems known as the "ClimaCab" system, or "No-Idle Truck HVAC," or variants thereof." (Compl., p. 3, ¶ 11.) The information at issue is Glacier Bay's source code that Glacier Bay has designated as responsive Bergstrom's First Requests. Source code is human-readable text in a programming language that, when compiled and run, determines how a system operates. The source code Bergstrom seeks will show exactly how the controller in Glacier Bay's ClimaCab system operates. This information will be determinative of infringement as to several of the claims of the patents in suit. The source code sought is both the best evidence regarding Bergstrom's infringement claim, and it is central to Glacier Bay's argument for non-infringement.

The facts of this case, and the need for the source code, are similar to the situation in *Metavante*. There, the defendant, Emigrant, terminated the parties' technology outsourcing agreement. If the plaintiff, Metavante, could establish that the termination was not "for cause," but "for convenience," it would be entitled to a significant termination fee. The source code for Emigrant's new system, Metavante argued, would assist Metavante in determining whether defendant's new system was a derivative of Metavante's system, which would, in turn, constitute evidence that the defendant terminated the agreement for convenience. *Metavante Corp.,* 2008 WL 1969596 *1. Conversely, if the source code was substantially different from Metavante's, it would serve as evidence that the defendant terminated the agreement for cause. The court held that the source code was discoverable, as it was "the best evidence to determine whether [defendant's]

7

new system is a derivative of Metavante's system." *Id.,* at *3. The court further explained:

> Considering. . . the fact that the source code pertains to the central issue in this case, whether [defendant] terminated the parties' agreement for cause or for convenience, and the fact that the source code would be covered by the. . . protective order, the court concludes that Metavante has demonstrated the requisite need for the source code to outweigh Emigrant's objections.

*Id.*

Similarly, in *Dynamic Microprocessor Associates v. EKD Computer Sales,* 919 F.Supp. 101 (E.D.NY. 1996), the court considered whether source code was discoverable in the context of a copyright infringement action. There, the defendant sought discovery of plaintiff's source code in order to defend against plaintiff's claims. Similar to the case at hand, in *Dynamic Microprocessor,* a protective order was in place, but plaintiff "vehemently opposed" production of the source code on the basis of its "high degree of confidentiality." *Id.* at 103. The court ordered the plaintiff to produce the source code, subject to a protective order previously entered.[3]

### B. The Protective Order Previously Entered by this Court will Sufficiently Protect Glacier Bay's Interests.

Glacier Bay's only argument for refusing to produce the source code is that it is "highly confidential." However, the Protective Order issued by this Court on

---

[3] The Court in *Dynamic* imposed some conditions on the receipt of the source code (none of which Bergstrom would oppose) but notably, required the plaintiff to turn a copy over to the defendant.

8

January 30, 2009 already protects such confidential information. Specifically, the Protective Order allows the parties to designate information as "Confidential – Attorney's Eyes Only," "when, in the reasonable judgment of the designating party, the information is Confidential Information, but is too sensitive, valuable or difficult to protect from misuse to allow a wider circulation." (Protective Order, p. 3, ¶ 2(a).) Under the Protective Order, information that is designated as "Confidential – Attorney's Eyes Only" may be disclosed only to the attorneys involved in this litigation (and their staff), consultants and experts (and their staff), and the Court and its personnel. (Protective Order, pp. 5-6.) Any consultant or expert must first sign a statement that indicates that person's willingness to abide by the terms of the Protective Order. (Protective Order, pp. 6, 13.) The Protective Order even allows Glacier Bay to require the return of the source code at the conclusion of the litigation. (Protective Order, p. 6) As previously indicated, Bergstrom is willing to stipulate to the applicability of the Attorneys' Eyes Only designation to the source code.

As such, Glacier Bay faces no unreasonable risk or burden upon production of the source code as requested by Bergstrom. Glacier Bay's interests are sufficiently protected by the provisions of the Protective Order.[4] Bergstrom, on the other hand, would be substantially prejudiced if forced to follow Glacier Bay's

---

[4] Bergstrom is also willing to consider reasonable additional protections provided they do not interfere with Bergstrom's ability to review and use the source code for purposes of this litigation, but Glacier Bay refused to discuss any alternative for production other than the unreasonable method it first proposed. (Stockhausen Decl., ¶14.)

9

proposed method of disclosing the source code. Bergstrom would be forced to review some 23,500 documents per version of source code while sitting at Glacier Bay's laptop under Glacier Bay's supervision. Bergstrom would not get the benefit of multiple reviews or reasonable access to other documents and materials for cross reference during the course of any review, but rather would have to make on-the-spot determinations of what portions of the vast and complex code it needed to have printed for future reference. Bergstrom would be forever bound by those hasty decisions unless it wanted to go through the whole expensive and burdensome process again. This is an unreasonable and unnecessary burden to place on Bergstrom that serves no legitimate purpose, particularly in light of the critical nature of the information at issue to the ultimate question of infringement in this case.

## CONCLUSION

Bergstrom's need for the source code far outweighs any limited burden that will be imposed on Glacier Bay due to the production of the source code in light of the applicability of the Protective Order in this case. Bergstrom respectfully requests that this Court order Glacier Bay to produce the source code in compliance with Bergstrom's requests and grant Bergstrom its costs and fees incurred in bringing this motion.

Dated this 17th day of December, 2009.

<u>s/ Jessica Hutson Polakowski</u>
Paul J. Stockhausen
Amy L. Lindner
Jessica Hutson Polakowski
Attorneys for Plaintiff
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 2100
Milwaukee, WI 53202
Telephone: 414-298-1000
Facsimile: 414-298-8097
pstockha@reinhartlaw.com
alindner@reinhartlaw.com
jpolakowski@reinhartlaw.com

REINHART\3016280