# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

BERGSTROM, INC.,                     )
                                     )
    *Plaintiff,*                      )   Case No. 3:08-cv-50078
                                     )
v.                                   )   Hon. Kapala, U.S.D.J.
                                     )   Hon. Mahoney, U.S.M.J.
GLACIER BAY, INC.,                   )
                                     )
    *Defendant.*                     )
                                     )
                                     )

## DEFENDANT GLACIER BAY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF BERGSTROM'S MOTION TO COMPEL DISCOVERY

Defendant Glacier Bay, Inc. ("Glacier Bay") hereby opposes the Motion to Compel Discovery filed by Plaintiff Bergstrom, Inc. ("Bergstrom") (Dkt. No. 85). Glacier Bay does not dispute the relevance of the Glacier Bay ClimaCab source code sought by Bergstrom. Instead, Glacier Bay's opposition to Bergstrom's Motion is rooted in the fact that, under Bergstrom's proposed discovery scheme, a heightened level of protection beyond the "Confidentiality Stipulation and Protective Order" (Dkt. No. 40) ("Protective Order") currently in force for this action is necessary to protect Glacier Bay from harm if this highly confidential and sensitive information, which constitutes the "crown jewels" of Glacier Bay's product line, is disclosed to Bergstrom, a competitor.

Specifically, the current Protective Order lacks a "prosecution bar" provision that would prevent persons involved in prosecuting Bergstrom patents, including but not limited to Bergstrom's patent counsel at Reinhart Boerner Van Deuren s.c. ("Reinhart"), from reviewing the source code and potentially using the knowledge gained to shape future patent prosecution decisions for Bergstrom. Therefore, Glacier Bay respectfully requests that this Court deny

Bergstrom's Motion to Compel unless and until special protection, including at minimum a prosecution bar, is put in place with respect to the source code at issue. In accordance with this request and with the terms of the Protective Order currently in force, Glacier Bay is filing, simultaneously with this Opposition, a Motion for a Special Protective Order covering its source code only.

In the alternative, Glacier Bay respectfully requests that this Court deny Bergstrom's Motion to Compel and instead order that the source code be produced to Bergstrom through the "laptop inspection method" proposed by Glacier Bay in Gregory S. Norrod's September 21, 2009 e-mail to Paul J. Stockhausen (attached as Exhibit A to the Declaration of Mary M. Calkins ("Calkins Declaration") being filed in support of Glacier Bay's Motion for a Special Protective Order).[1] Glacier Bay is and has been willing to produce its source code to Bergstrom by the laptop inspection method without an additional protective order, as the laptop inspection method provides sufficient protection while still affording Bergstrom's expert and attorney ample opportunity to review the source code.

Finally, Glacier Bay respectfully requests that this Court deny Bergstrom's request for its "fees and costs" incurred in bringing its Motion. Contrary to Bergstrom's portrayal of events, Glacier Bay has not "refused to comply with its discovery obligations," but rather has disagreed with Bergstrom on an appropriate manner of production for highly sensitive information. Furthermore, as shown by Mr. Norrod's e-mail, Glacier Bay proposed its laptop inspection scheme to Bergstrom on September 21, 2009. For approximately two and a half months, Bergstrom failed to respond to Glacier Bay's proposal in any manner whatsoever, before finally

---

[1] The same e-mail from Mr. Norrod is also attached as Exhibit C to the Declaration of Paul J. Stockhausen ("Stockhausen Declaration") filed with Bergstrom's Motion to Compel (Dkt. No. 87).

sending a letter on December 3, 2009 rejecting it.[2] In that letter, Bergstrom further stated that "[i]f Glacier Bay believes that the Protective Order does not provide sufficient protection, Glacier Bay must move for and obtain an order for special protection from the Court." Glacier Bay is now moving for that order, following the parties' additional meet and confer on this issue on December 11, 2009. In short, Glacier Bay attempted in good faith to work out a suitable means for producing, without undue delay, its highly sensitive information, and should not be penalized for doing so, particularly when at least two and a half months of delay were caused by Bergstrom's own failure to substantively respond to Glacier Bay's proposal.

## I.   FACTUAL BACKGROUND

As Bergstrom noted, on January 30, 2009, this Court issued the Protective Order currently in force for this Action (Dkt. No. 40). Although the parties negotiated many of the terms of the Protective Order, the inclusion of a "prosecution bar" provision was the major point of contention between the parties prior to the entry of the Order, with Glacier Bay moving for the entry of an order containing a prosecution bar (Dkt. No. 23) and Bergstrom opposing (Dkt. No. 29). As Glacier Bay noted, at least one attorney at Reinhart, Jeffrey Makeever, had prosecuted the patent-in-suit and was continuing to prosecute related patents while also advising Bergstrom on litigation strategy. (*See, e.g.*, Dkt. No. 34-2 (mem. op.).) Another member of Reinhart's litigation team, David G. Hanson, is currently listed on the Reinhart website as belonging to the firm's "Competitive Analysis" group, which, among other things, is advertised as analyzing the scope of competitors' (such as Glacier Bay's) products and making strategic recommendations to its clients (such as Bergstrom) regarding patent prosecution and portfolio leveraging.

Based on its concerns regarding members of Bergstrom's patent prosecution team

---

[2] Bergstrom's December 3, 2009 letter is attached as Exhibit B of the Calkins Declaration and also as Exhibit D of the Stockhausen Declaration (Dkt. No. 87).

gaining access to highly confidential Glacier Bay information, Glacier Bay proposed a

prosecution bar provision that read as follows:

> . . . Unless otherwise agreed to in writing by a designating party (at
> its own discretion), any person who sees, reviews, or substantively
> discusses the content of documents, information or other things of
> another party designated hereunder as "Confidential" or
> "Confidential-Attorney's Eyes Only" shall not participate directly
> or indirectly in the prosecution of any patent application
> pertaining: (i) to heating, ventilation, and air conditioning (HVAC)
> systems, components of HVAC systems, or HVAC related
> products; or (ii) to products on behalf of any party to this action
> (including any predecessors, employees, parents, subsidiaries,
> divisions, successors, or affiliates of the receiving party, or any
> entity having a controlling interest in the patent-in-suit). Such
> prosecution bar shall last from the date of the entry of this Order
> until 2 years after the conclusion of the litigation (including
> appeals) or 2 years after the conclusion of the person's
> involvement therewith, whichever comes first; except, however,
> that such involvement in the prosecution of any such patent
> application on behalf of the receiving party(ies) with which the
> person is affiliated (including any predecessors, employees,
> parents, subsidiaries, divisions, successors, or affiliates of the
> receiving party, or any entity having a controlling interest in the
> patent-in-suit) shall be precluded for a period of 3 years after the
> conclusion of this litigation (including appeals) or 3 years after the
> conclusion of the person's involvement therewith, whichever
> comes first.

(Dkt. No. 24 at 3-4.) This Court ultimately decided not to include a blanket prosecution

bar in the Order, but suggested that "[t]here may be certain materials being produced of such a

highly sensitive nature where good cause may in fact exist sufficient" for a prosecution bar and

that Glacier Bay "is welcome to try again, setting forth assertions as to particular documents and

specific individuals." (Dkt. No. 34-2 at 7 (mem. op.)). The Protective Order that was entered

also allows parties to move for and obtain an order for special protection from this Court if they

feel greater protection of certain information is warranted. (Dkt. No. 40 at 7, para. 12).

Glacier Bay set about producing its responsive information in accordance with the

Protective Order. In September 2009, Gregory Norrod, counsel for Glacier Bay, contacted Paul

Stockhausen, counsel for Bergstrom, regarding Glacier Bay's planned production of its source

code in response to Bergstrom's discovery requests. By e-mail on September 21, 2009, Mr.

Norrod proposed that Glacier Bay make its source code available for inspection to Bergstrom's

expert and "a Reinhart attorney" on a laptop at a Foley & Lardner office. Mr. Norrod noted that

in his experience, this method was "the most cost-effective and useful way to produce source

code" and that Glacier Bay believed "this approach provides the best balance of security, cost-

effectiveness, usefulness and accessibility." He asked that Bergstrom's counsel "let [him] know

at your earliest convenience if you agree with this proposal." (Calkins Declaration, Exh. A.)

    Neither Mr. Norrod nor any other counsel for Glacier Bay received any response to this

proposal for approximately two and a half months. On December 3, 2009, Mr. Stockhausen sent

a letter response by e-mail stating that Glacier Bay's proposed method of source code production

was "insufficient," demanding that the source code be produced to Bergstrom in electronic

format using OCR'ed TIFF, and stating that "[i]f Glacier Bay believes that the Protective Order

does not provide sufficient protection, Glacier Bay must move for and obtain an order for special

protection from the Court." (Calkins Declaration, Exh. B.) Following the parties' unsuccessful

attempt to resolve the issue at a meet and confer on December 11, 2009, Bergstrom's Motion to

Compel (and Glacier Bay's Motion for a Special Protective Order, being filed concurrently with

this Opposition) followed.

## II.    ARGUMENT

### A.    Glacier Bay's Source Code Is Information of a "Highly Sensitive Nature" For Which Good Cause Exists to Support a Prosecution Bar

    Glacier Bay's source code is exactly the type of critical, sensitive information that

Glacier Bay had in mind when it initially moved for a protective order containing a prosecution

bar. Glacier Bay considers this source code to be one of the "crown jewels" among its

intellectual property assets, as it represents the entire operating system of Glacier Bay's ClimaCab product. Such valuable and sensitive information, akin to a trade secret, is deserving of special protection. Allowing the dissemination of entire copies of the source code, with no prosecution bar, would create a significant risk that Reinhart attorneys involved in both patent prosecution and litigation on behalf of Bergstrom (at least two of whom, Messrs. Makeever and Hanson, have been identified by Glacier Bay) would use the knowledge they gained about Glacier Bay's source code in drafting and prosecuting patent applications for Bergstrom, to Bergstrom's competitive advantage.

In this situation, where litigation counsel is also involved in the prosecution of related patents, this Court, among other district courts, has recognized that such risk might arise, not from the ethics of particular attorneys, but from "the limits of human beings to completely compartmentalize the multiple sources from which they obtain information." *Interactive Coupon Mktg. Group, Inc. v. H.O.T.! Coupons Inc.*, No. 98-C-7408, 1999 WL 618969, at *9 (N.D. Ill. Aug. 9, 1999) (unpublished mem. op.) (quoting *Motorola, Inc. v. Interdigital Tech. Corp.*, 1994 U.S. Dist. LEXIS 29714 at *14-15, 23 (D. Del. 1994)); *accord Cheah IP LLC v. Plaxo, Inc.*, No. C-08-4872, 2009 WL 1190331 (N.D. Cal. May 4, 2009). Indeed, even when denying the blanket prosecution bar provision originally requested by Glacier Bay, this Court acknowledged that some materials might be of such a "highly sensitive nature" that good cause might exist to support a prosecution bar with respect to those materials. (Dkt. No. 34-2 at 7.) Glacier Bay's source code, above all else, falls into that category.

"The importance of keeping source code confidential and the risks of disclosure to competitors are well established." *United States v. Cox*, 73 F. Supp. 2d 751, 764 n.15 (S.D. Tex. 1999); *see also* J. Christopher Carraway, *Discovery Issues in Patent Cases*, 982 PLI/ Pat 419,

476 (2009) (stating that during discovery, "[f]or computer source code, severe restrictions on access are generally appropriate."). As several courts have recognized, source code has been treated as a trade secret where, as here, the details of the code cannot be readily reviewed by the public and/or only a limited amount of technical detail of the program has been disclosed to the public. *See, e.g., Linkco, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 499 (S.D.N.Y. 2002); *Cox*, 73 F. Supp. 2d at 764 n.15. Likewise, Glacier Bay's source code is not normally visible to the public, including Glacier Bay's competitors, nor is proprietary information about the code generally available. Glacier Bay's source code would not normally be disclosed to anyone, least of all a competitor, without the highest level of protection. If the source code must be disclosed in this case, at minimum it is deserving of the additional protection of a prosecution bar.

Bergstrom's reliance on *Metavante Corp. v. Emigrant Savings Bank*, No. 05-cv-1221, 2008 WL 1969596 (E.D. Wisc. 1990), mischaracterizes the substance of the dispute between the parties. Glacier Bay did not categorically refuse to allow Bergstrom to review its source code, nor did Glacier Bay contend that the source code was somehow irrelevant or peripheral to this infringement case. Rather, the dispute between the parties turns on the method of production and the level of protection Glacier Bay will receive for its prized "crown jewel" information. If Bergstrom had been willing to agree to a prosecution bar (or alternatively, had agreed to Glacier Bay's "laptop inspection" plan), it would have received this information some time ago. Instead, Bergstrom demanded a particular method of production and further stated that if Glacier Bay wanted additional protection for its source code, it would have to file a motion with this Court to get it. Furthermore, a prosecution bar pertaining only to the source code would pose little hardship to Bergstrom, as Reinhart likely has attorneys who are not involved in patent prosecution or competitive patent analysis who could handle the tasks of reviewing the source

code and working with Bergstrom's expert. *See Cheah*, 2009 WL 1190331 at *1. Compared to the potentially great harm that could befall Glacier Bay if its confidential information is used, however inadvertently, to benefit its competition, the balance of interests favors the order of a prosecution bar covering Glacier Bay's source code, if Bergstrom's Motion is granted.

**B.    Alternatively, Glacier Bay Remains Willing to Produce Its Source Code Via "Laptop Inspection" Without a Special Protective Order**

In the alternative, Glacier Bay is and has been willing to produce its source code information via the "laptop inspection method" set forth in Gregory Norrod's September 21, 2009 e-mail to Paul J. Stockhausen (Calkins Declaration, Exh. A.), without the entry of a special protective order. This method has been recognized by authorities as a more typical way to produce source code than in paper or document form. *See, e.g.*, Carraway at 476-77 (noting that source code "might be produced in paper form" but that "[m]ore typically, however, source code is produced in electronic form on a laptop computer with password protection and provisions that the laptop may not be connected to a network" in addition to other protections, such as being maintained in a locked room with a log kept of those who access the code).

As Mr. Norrod stated, Glacier Bay believes this method provides a balance of "security, cost-effectiveness, usefulness, and accessibility," particularly given that the source code comprises approximately 23,500 documents per version and Bergstrom is seeking multiple versions. Practically speaking, it is highly unlikely that all 23,500 documents would be useful to Bergstrom's case, and the inspection method essentially duplicates the normal document review process that a Bergstrom attorney would have to perform anyway. This inspection method would further allow Bergstrom's expert to copy excerpts that he deems important and keep those copies, with the appropriate confidentiality designations added, for multiple review. Overall, Glacier Bay believes that the laptop inspection method provides a viable and useful alternative to

production of the source code absent a special protective order with a prosecution bar.[3]

**C.    Bergstrom Is Not Entitled To Its Attorney Fees and Costs In Connection With Its Motion to Compel**

Finally, Bergstrom's request for its costs and fees incurred in bringing its Motion is baseless and should be denied. Federal Rule of Civil Procedure 37(5) states that a court "must not order" the payment of expenses, including attorneys' fees, incurred in bringing a motion to compel if "the opposing party's nondisclosure, response, or objection was substantially justified[.]" Glacier Bay's responses and objections were justified, given that the source code at issue is some of the most important, critical and highly confidential information developed and possessed by Glacier Bay. Glacier Bay did not flatly refuse to produce its source code, but instead tried in good faith to work out a production method that would meet the needs of both parties without requiring that additional protection be sought. When Bergstrom finally, after months of silence, responded and rejected Glacier Bay's proposal, Glacier Bay promptly met and conferred, and has taken the appropriate steps put in place by the Protective Order and the previous opinion of this Court that allow a party to seek heightened protection for particular information. Glacier Bay should not be penalized for attempting to protect its crucial information using the mechanisms available to it.

**III.    CONCLUSION**

For the foregoing reasons, Glacier Bay respectfully requests that this Court either deny Bergstrom's Motion to Compel unless and until special protection, including at minimum a prosecution bar (along with any other protection this Court might deem necessary), is put in place with respect to the source code at issue, in accordance with Glacier Bay's concurrently

---

[3] To the extent that Bergstrom might object to this method based on lack of inspection time, Glacier Bay notes that its offer for laptop inspection has been outstanding since September 21, 2009, thus providing several additional months prior to the scheduled close of discovery for Bergstrom to undertake its review.

filed Motion for a Special Protective Order; or, in the alternative, order Bergstrom to accept

Glacier Bay's "laptop inspection proposal" for producing source code information to Bergstrom,

as set forth in Gregory Norrod's September 21, 2009 e-mail to Paul Stockhausen. Glacier Bay

further respectfully requests that this Court deny Bergstrom's motion for its fees and costs

associated with its Motion to Compel, and for all further relief.

Dated: January 8, 2010                     Respectfully submitted,

                                           /s/ Mary M. Calkins

                                           Michael D. Kaminski (Ill.Bar 6195649)
                                           Kenneth E. Krosin (*pro hac vice*)
                                           Mary M. Calkins (*pro hac vice*)
                                           FOLEY & LARDNER LLP
                                           3000 K Street, N.W., Suite 500
                                           Washington, D.C. 20007-5109
                                           Telephone: 202.672.5300
                                           Facsimile: 202.672.5399
                                           mkaminski@foley.com
                                           kkrosin@foley.com
                                           mcalkins@foley.com

                                           Gregory S. Norrod (Ill. Bar 6199391)
                                           FOLEY AND LARDNER LLP
                                           321 North Clark Street, Suite 2800
                                           Chicago, IL 60610-4764
                                           Telephone: 312.832.4500
                                           Facsimile: 312.832.4700
                                           gnorrod@foley.com

                                           *Attorneys for Defendant*
                                           *Glacier Bay, Inc.*

## **CERTIFICATE OF SERVICE**

I, Mary M. Calkins, an attorney, hereby certify that on January 8, 2010, the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send an electronic copy to all counsel of record that have consented to electronic service.

/s/  Mary M. Calkins
Mary M. Calkins