UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| BERGSTROM, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 3:08-cv-50078 |
| | ) | Hon. Kapala, U.S.D.J. |
| GLACIER BAY, INC., | ) | Hon. Mahoney, U.S.M.J. |
| | ) | |
| *Defendant*. | ) | |
| | ) | |
| | ) | |

## DEFENDANT GLACIER BAY, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Defendant Glacier Bay, Inc. ("Glacier Bay") submits this reply in support of its Motion for a Protective Order (1) limiting any further deposition testimony for Topic No. 14 of Bergstrom's 30(b)(6) Deposition Notice of Glacier Bay to Plaintiff's Exhibit 92 ("PX92") and (2) requiring that this deposition be held at the office of Foley & Lardner LLP ("Foley") in Palo Alto, CA, the location of the earlier depositions on this topic.

Bergstrom's Response in Opposition to Glacier Bay's Motion ("Opposition") is nothing more than a regurgitation of the same arguments Bergstrom put forth in its own Motion to Compel further testimony on this topic (Doc. No. 161 and Brief in Support, Doc. No. 164), which forced Glacier Bay to seek this protective order. Bergstrom's only new assertion is a baseless argument that Glacier Bay has not shown good cause for a protective order. Therefore, Glacier Bay's Motion should be granted. Glacier Bay also respectfully requests that this Court deny Bergstrom's request for costs and fees incurred in defending against this Motion because Glacier Bay was substantially justified in seeking protection from the Court.

I.    ARGUMENT

As a preliminary matter, Glacier Bay had hoped it would not need to resort to a protective order for Topic 14 because, although overly broad, it appeared that Bergstrom intended to limit its questions to the battery drain test in PX92 and the thermistor test in Plaintiff's Exhibit 93 ("PX93") during the initial Rule 30(b)(6) deposition of Mr. Justin Dobbs on this topic. It was not until the deposition of Mr. Ethan Peterson, Glacier Bay's supplemental witness on Topic 14, that Bergstrom became unreasonable, asking wide open questions about all testing ever done by Glacier Bay on the accused ClimaCab product. *See* Motion for Protective Order ("Motion"), at p. 6. In response to that line of questioning and Bergstrom's Motion to Compel, which both apparently seek unlimited testimony on this topic, Glacier Bay was forced to seek protection from this Court.

### A.    Bergstrom's Claim That Glacier Bay Has Not Shown Good Cause For A Protective Order Is Meritless

Federal Rule of Civil Procedure 26(c)(1) provides that a party may move for a protective order, and a court may, for good cause, issue such an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," including "limiting the scope of disclosure or discovery to certain matters" and "prescribing a discovery method other than the one selected by the party seeking discovery." When the issue involves Rule 30(b)(6) depositions, protective orders limiting the scope of testimony are warranted when the noticed topics are too vague or broad to allow the corporate deponent to reasonably prepare a witness to testify. *Kimberly-Clark Corp. v. Tyco Healthcare Retail Group*, 2007 U.S. Dist. LEXIS 16380, *7-8 (E.D. Wis. Feb. 23, 2007).

Glacier Bay has shown good cause for a protective order to limit the scope of Topic 14 because this topic is so broad that it is unreasonable and unduly burdensome for Glacier Bay to

2

prepare a witness to testify to the complete scope. As explained in its Motion, Glacier Bay conducts over 100 different types of tests on its ClimaCab product and has conducted over 1,000 tests since 2006. *See* Motion, at p. 2 and July 21, 2010 Declaration of Paul Knauer (Doc. No. 169), ¶¶ 7 & 10, attached as Ex. L to the Declaration of Debra A. Lange in support of Glacier Bay's Opposition to Bergstrom's Motion to Compel (Doc No. 166) ("July 21, 2010 Knauer Declaration"). In addition, Glacier Bay's entire engineering department is involved at one time or another in the testing of this product, meaning knowledge about testing resides with many individuals. (July 21, 2010 Knauer Declaration, ¶ 11.) For these reasons, Mr. Knauer of Glacier Bay estimates that it would take at least two "man-months" to prepare a witness to testify about every aspect of every test that Glacier Bay has conducted on its ClimaCab product since development began in late 2006. *See* August 13, 2010 Declaration of Paul Knauer, ¶ 5, attached as Ex. B to the Declaration of Debra A. Lange in support of this reply ("Lange Declaration"). Two man-months of preparation would impose a great burden on Glacier Bay, and an unnecessary one because Bergstrom could have specified the areas of testing in which it was interested before either of the two depositions on this topic.

Glacier Bay also has shown good cause to limit the scope of Topic 14 due to Bergstrom's questionable litigation tactics related to this topic. The Court "must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that: . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. Proc. 26(b)(2)(C)(ii). Glacier Bay produced two witnesses on two different occasions prepared to testify about Glacier Bay's testing of its ClimaCab product. Bergstrom failed to exhaust the full knowledge of Glacier Bay's first witness, Mr. Justin Dobbs; failed to respond to the e-mail of Glacier Bay's counsel seeking to clarify the scope of Mr. Ethan Petersen's

3

Deposition; and failed to present the full set of Glacier Bay documents related to the test in PX92 during either deposition.[1] Bergstrom contends that it has been deprived of its opportunity to question Glacier Bay on the topic of testing yet it is Bergstrom's own obstructionist and inefficient actions that have left Bergstrom with two missed opportunities. The Court should not reward Bergstrom with another.

Contrary to Bergstrom's claim, Glacier Bay's good cause for a protective order is based on specific facts and not conclusory statements. Glacier Bay did not merely reiterate its objection to the breadth of the topic. It presented the declaration of Mr. Knauer to explain the breadth of this topic and the difficulty in preparing a corporate deponent to testify. *See* July 21, 2010 Knauer Declaration. Nor did Glacier Bay offer conclusory statements that Bergstrom had forfeited its right to further general questioning on Topic 14. Instead, Glacier Bay laid out Bergstrom's disturbing litigation tactics related to the topic. If anyone is making conclusory statements it is Bergstrom, which continues to proclaim that Mr. Dobbs and Mr. Petersen were "unprepared."

### B. Bergstrom Continues To Mischaracterize Mr. Dobbs And Mr. Petersen As Unprepared, Ignoring The Substance Of Their Testimony On PX92 and PX93

Bergstrom continues to claim that Mr. Dobbs and Mr. Petersen were completely unprepared—ignoring the fact that both witnesses did provide substantive testimony on Topic 14 and that it was unreasonable to expect these witnesses to be able to answer every possible

---

[1] Contrary to Bergstrom's assertion in the Opposition, Glacier Bay has not accused Bergstrom of "altering" the Glacier Bay *documents* in PX92. Instead, Glacier Bay pointed out that Bergstrom altered the *exhibit* by supplementing it with additional documentation. Specifically, during Mr. Dobbs' deposition, Bergstrom presented PX92 as a one page graph of a ClimaCab battery drain test. During Mr. Petersen's deposition, Bergstrom altered the exhibit to include both the graph and its underlying data. During neither deposition did Bergstrom present the e-mail to which the graph and underlying data were attached and which provided the missing information to put the test into context.

question regarding every last test conducted by Glacier Bay on the ClimaCab product, especially for the test in PX92 for which Bergstrom presented incomplete documentation.

With respect to PX92, Bergstrom characterizes Mr. Dobbs as unprepared because he could not put into context this one page graph, which is not centrally located on the Glacier Bay computer server but is only memorialized as an attachment to an e-mail with limited distribution. *See* e-mail (Doc. No. 170) and July 23, 2010 Declaration of Ethan Petersen (Doc. No. 169), ¶ 8, attached respectively as Exs. J and M to the Declaration of Debra A. Lange in support of Glacier Bay's Opposition to Bergstrom's Motion to Compel (Doc No. 166). Bergstrom did not see fit to present that cover e-mail as part of PX92 during the Dobbs deposition,[2] so PX92 did not include any real identifying information, such as a date, the names of Glacier Bay employees, or even the data underlying the graph. With over 1,000 tests of the ClimaCab product, each with varying degrees of documentation and employee participation, it was completely unreasonable for Bergstrom to expect Mr. Dobbs to answer questions about PX92 without the context provided by the cover e-mail and underlying data. Nonetheless, Glacier Bay offered Mr. Petersen as a supplemental witness to testify specifically about this exhibit.

Bergstrom then compounded its misfeasance with respect to PX92 at Mr. Peterson's follow-up deposition by including the underlying data for this exhibit but not the cover e-mail. Why did it not provide the underlying data and cover e-mail at Mr. Dobbs' deposition? Bergstrom feebly contends that it did not include the underlying data at this deposition because it "consisted of hundreds of pages" (Opposition, at p. 6), yet it provided this underlying data at Mr.

---

[2] Interestingly, Bergstrom included the cover e-mail to PX93, which helped both Mr. Dobbs and Mr. Peterson put this exhibit into context. Why Bergstrom failed (or refused) to do so with respect to PX92 is a matter of conjecture.

Peterson's deposition.[3] Why did it not provide the one page cover e-mail for PX92 at Mr. Peterson's follow-up deposition? As explained in its Motion, Glacier Bay is fully capable of providing a witness to testify on this exhibit when all three documents are included, yet it has been forced to go through two depositions with incomplete documentation that easily could have been avoided by Bergstrom.

With respect to PX93, Bergstrom misrepresents the substance of Mr. Dobbs' and Mr. Petersen's testimony. Mr. Dobbs answered numerous questions about this exhibit. Nevertheless, Bergstrom prematurely ended all questioning of him when he referred Bergstrom to the ClimaCab source code in response to a question, and Bergstrom's counsel incorrectly asserted that it did not have that source code:

> Q. Let's take it step by step. What does the I AUX column mean? What is that column showing?
>
> A. My understanding was that the I AUX column was the current through the inductor between the two battery packs. But since these are so similar, I would suggest we either refer to Ethan [Peterson] or check the source code to make sure that we understand or that I understand the difference between these two columns.
>
> Mr. Stockhausen: Okay. I'll just hold the deposition open as to the entire subject of testing to go through the various test results so as not to waste time on it right now. Please refer to Exhibit 66 – I'm sorry – 76, that I provided to you earlier. This is the PMM technical description document for the PMM 1.6.
>
> Mr. Krosin: Before we go on, do you have the source code that he's referring to?
>
> Mr. Stockhausen: I have source code. I don't know if I have the source code he's referring to. I don't have a complete set.

(Petersen Deposition, 113:9-114:5, attached as Ex. A to the Lange Declaration.) Contrary to Mr. Stockhausen's statement, Glacier Bay produced all versions of the source code for its ClimaCab product in February 2010 (Lange Declaration ¶ 4), so Bergstrom could have made that source

---

[3] Interestingly, Bergstrom provided the underlying data to PX93 at Mr. Dobbs' deposition, which comprised 186 pages yet failed (or refused) to do so for PX92. Again, the true reason is simply a matter of conjecture.

code available to Mr. Dobbs for review at his deposition. Moreover, Glacier Bay also offered Mr. Petersen as a supplemental witness to answer further questions on PX93, and he answered Bergstrom's questions on this exhibit.

### C. Bergstrom Has Failed To Provide a Reason For Not Limiting the Scope of Topic 14 to PX92 and PX93

Time and cost on both sides could have been saved if Bergstrom responded to Glacier Bay's June 22, 2010 e-mail to clarify the scope of the Petersen Deposition. If Glacier Bay had known in advance (1) that Bergstrom would expand the scope of this deposition beyond PX92 and PX93 and (2) the additional areas of testing important to Bergstrom, Glacier Bay could have addressed any issues with Bergstrom before the deposition and focused its preparation of Mr. Petersen accordingly.

None of Bergstrom's feeble explanations for its failure to respond to this e-mail has any merit. Bergstrom first contends that it merely "viewed such a response as counter-productive." *See* Bergstrom's Brief In Support of Its Motion to Compel (Doc. No. 164) at p. 14, n. 8. However, Bergstrom offers no basis for this argument other than to inappropriately cast dispersions on Glacier Bay's counsel. *Id.*

Second, Bergstrom contends that Glacier Bay was not "entitled to a preview of what documents we're going to use during the deposition"—a view contrary to the Court's practice in most major litigations:

> Mr. Krosin: . . . I sent that e-mail to Mr. Stockhausen a week before the deposition, and I said, "Paul, please tell me what other tests you want to ask about" – because I knew that there were lots and lots of them – "and tell us what documents you want to ask about and so we will have a prepared witness." He never responded to my e-mail.
>
> Mr. Rinehart: They weren't entitled to a preview of what documents we're going to use during the deposition.

7

> The Court: You know, counsel, I do that on most major litigations. Actually, I do require that if requested by the parties or it becomes a problem. I have the parties have a 48-hour rule that what exhibits you're gong to show to a witness be actually produced 48 hours before you take the deposition to avoid this type of problem, and I have found it to be very effective, particularly in patent cases.

(Transcript of July 28, 2010 Hearing, Doc. No. 176, 33:6-20.)

Finally, Bergstrom contends that it could not respond to the e-mail because it was "impossible for Bergstrom to identify specific tests it wants to question Glacier Bay about until Bergstrom knows what tests Glacier Bay performed." (Opposition at p. 6.) This argument is undermined by the fact that Glacier Bay produced all of its testing documents on the ClimaCab system to Bergstrom long before the 30(b)(6) deposition in issue. (Lange Declaration ¶¶ 3, 5.) Bergstrom cannot use a Rule 30(b)(6) deposition as a means to avoid its obligation to review these documents. *See* Fed. R. Civ. Proc. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.") Bergstrom also ignores the fact that it wasted an opportunity to gain more knowledge about the types of tests that Glacier Bay conducts by abruptly ending its questioning of Mr. Dobbs on the topic of testing after covering just two exhibits.

### D. The Deposition Time That Remains For Topic 14 Does Not Warrant The Scope of Testimony That Bergstrom Now Demands

If the Court were to find that Bergstrom is entitled to testimony on Topic 14 beyond questions relating to PX92, its scope still should be limited because the burden on Glacier Bay to prepare for this topic greatly outweighs any benefit Bergstrom could realize in the deposition time that remains.

8

Only about five minutes remain for Topic 14, using the Court's 5-hour rule, and yet Bergstrom unreasonably expects that Glacier Bay spend two man-months preparing a witness to testify on the full scope of this topic. Glacier Bay designated Mr. Dobbs for eight of Bergstrom's 67 noticed topics, including Topic 14. *See* Ex. B (Doc. No. 169), attached to the Declaration of Debra A. Lange in support of Glacier Bay's Opposition to Bergstrom's Motion to Compel (Doc No. 166). That deposition lasted just under 4.5 hours, and Mr. Petersen's supplemental deposition on Topic 14 alone lasted for approximately 0.5 hours, so only about five minutes remain for further testimony on this topic. (Lange Declaration, ¶¶ 7-8.) Five minutes barely covers questions relating to PX92, much less the entire scope of this topic.

### E. Bergstrom Is Not Entitled To Its Costs And Attorney Fees In Connection With This Motion

Finally, Bergstrom's request for its costs and fees incurred in defending against this Motion for a Protective Order is baseless and should be denied. Federal Rule of Civil Procedure 37(a)(5)(B) states that a court "must not order" the payment of expenses, including attorneys' fees, incurred in bringing a motion for a protective order if "the motion was substantially justified." For all the reasons set forth in the preceding Reply and Motion, Glacier Bay was justified in bringing this Motion in view of the facts and law of discovery. Glacier Bay has already produced two witnesses prepared to testify on the topic of testing. Bergstrom failed to exhaust the first witness' knowledge of the topic, failed to clarify the scope of the second witness' deposition, and failed to present complete documentation for exhibits during both. Bergstrom now seeks a third opportunity to depose Glacier Bay on this topic. Glacier Bay would be unduly burdened by preparing a witness to testify to the breadth now demanded by Bergstrom, especially given the very limited deposition time remaining for this topic. Glacier

9

Bay therefore should not be penalized for simply seeking protection from the Court to limit any further testimony on Topic 14 to PX92.

## II. CONCLUSION

For the foregoing reasons, Glacier Bay respectfully asks this Court to grant its Motion for a Protective Order and deny Bergstrom's request for costs and fees incurred in defending against this Motion.

Dated: August 16, 2010                    Respectfully submitted,

                                                        /s/ Debra A. Lange

Michael D. Kaminski (Ill. Bar No. 6195649)
Kenneth E. Krosin (admitted *pro hac vice*)
Mary M. Calkins (admitted *pro hac vice*)
Debra A. Lange (admitted *pro hac vice*)
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5109
Telephone:  (202) 672-5300
Facsimile:  (202) 672-5399
mkaminski@foley.com
kkrosin@foley.com
mcalkins@foley.com
dlange@foley.com

Gregory S. Norrod (Ill. Bar 6199391)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60610-4764
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
gnorrod@foley.com
*Attorneys For Defendant Glacier Bay, Inc.*

**CERTIFICATE OF SERVICE**

I, Debra A. Lange, an attorney, hereby certify that on August 16, 2010, the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send an electronic copy to all counsel of record that have consented to electronic service.

/s/ Debra A. Lange